UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTOBAL FRANCISCO ARREAZA SANCHEZ,<br>Petitioner,<br>v.<br>JAMES JANECKA, et al.,<br>Respondents. | Case No. 5:26-cv-04638-KES<br><br>ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY |

## I. INTRODUCTION

Cristobal Francisco Arreaza Sanchez ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 8.)

After the Court dismissed the initial Petition with leave to amend (Dkt. 13), Petitioner filed the operative First Amended Petition ("FAP" at Dkt. 15). Respondents answered the FAP ("Answer" at Dkt. 17), and Petitioner replied

("Reply" at Dkt. 18).

The Petition is granted and Respondents are directed to immediately release Petitioner from custody. Respondents are also enjoined from removing Petitioner to Mexico, or any other third country, without following the procedures set forth in this order.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Immigration Court's Grant of Protection from Removal and Release on Supervision (February 2023).

Petitioner is a native and citizen of Venezuela. (FAP at 6, ¶ 24.)

On February 6, 2023, an immigration judge ("IJ") denied his applications for asylum and withholding of removal because of aggravated felony convictions—two convictions for assault with a deadly weapon other than a firearm under California Penal Code § 245(a)(1)—but granted Petitioner deferral of removal to Venezuela under the Convention Against Torture ("CAT"). (FAP at 6, ¶ 24.) The IJ's order was based on "extensive findings regarding Petitioner's serious mental schizophrenia, bipolar disorder, post-traumatic stress disorder, and polysubstance abuse dependence; the Venezuelan government maintains a documented policy and practice of denying psychiatric medication to, and mistreating, detained and institutionalized individuals with mental illness; and that Petitioner accordingly faces a more than fifty percent chance of torture if removed to Venezuela. (FAP at 6, ¶ 25.) Petitioner currently requires ongoing psychiatric medication, including Depakote (valproic acid) and Zyprexa (olanzapine) to manage his mental illness. (Pet. at 7, ¶ 29.)

Following the grant of CAT relief, Petitioner was released on an order of supervision ("OSUP") and placed in the Intensive Supervision Appearance Program ("ISAP"), which required regular check-ins with ICE. (FAP at 7, ¶¶ 26-27.) It appears that Petitioner remained at liberty on the ISAP for approximately three years.

**B. Prior Detention and Successful Prior Habeas Petition (March-April 2026).**

On March 25, 2026, Petitioner attended a regularly scheduled check-in appointment and was detained by ICE. (FAP at 7, ¶ 27.)

On April 1, 2026, he filed a habeas petition in this Court challenging his detention. Arreaza Sanchez v. Bondi, No. 5:26-cv-01580-KES (C.D. Cal.), Dkt. 1 (petition). The petition assumed that DHS was planning to remove Petitioner to a third country, and it argued that DHS's current third-country removal policies violated the Immigration and Nationality Act ("INA"), CAT regulations, and the Fifth Amendment Due Process Clause. Id., Dkt. 1 at 14-16. The government responded that it was "not presenting any opposition argument at this time." Id., Dkt. 14 (answer). On April 20, 2026, the Court granted the unopposed petition and ordered, "Respondents shall immediately release Petitioner from custody, subject to any conditions to which he was subject under the ISAP program at the time of his detention on March 25, 2026." Id., Dkt. 15. He was released the same day. (FAP at 7, ¶ 28.)

On that date, ICE also served him with a new OSUP, which required, among other things, that Petitioner: (a) enroll in an Alternatives to Detention ("ATD") program with electronic GPS monitoring; (b) remain within a 75-mile travel radius; and (c) report in person to the Santa Ana ICE office on April 27, 2026. (FAP at 7, ¶ 28.)

**C. Drug-Related Arrest by Local Authorities (May 2026).**

On May 3, 2026, Petitioner was arrested by the Orange Police Department and charged with possession of a controlled substance with two or more prior convictions, see Cal. Health & Safety Code § 11395(b)(1); possession of a controlled substance, id., § 11350(a); and possession of unlawful paraphernalia, id., § 11364(a). (FAP at 7, ¶ 29.) As of September 17, 2026, those charges remain

pending in state court. (FAP at 7, ¶ 29.)[1] Petitioner was released from state custody on or about May 10, 2026. (FAP at 8, ¶ 30.)

**D. Re-Detention by ICE (May or June 2026).**

The parties dispute whether Petitioner was arrested by ICE on June 1, 2026, or on some earlier date.

DHS records reflect that, on June 1, 2026, Petitioner was served with a Notice of Revocation of Release, which stated that Petitioner violated a condition of his release when he was arrested by the Orange Police Department. (Dkt. 10-1 at 3.) The notice also stated that Petitioner's case was "under review for removal to an alternate country," since he had been granted withholding of removal to Venezuela. (Id.)

A separate form indicates that Petitioner had an informal interview with an ICE officer, also on June 1, 2026, and told the officer, "Please do not take me into custody. I have withholding of removal to Venezuela. I have a [TRO] against the government. I was just released 1 month ago. They did not find drugs on me. I have court for this next week and I am requesting to be released from custody." (Dkt. 10-1 at 6.)

The initial Petition alleged that Petitioner was arrested by ICE on April 27, 2026. (Pet. at 8-9, ¶¶ 35-36 ("Petitioner … reported in person, as required, ***on April 27, 2026***, at 7:00 a.m. to the Santa Ana ICE office. … At that check-in, ICE officers took Petitioner back into custody.") (emphasis added); see also Pet. at 9, ¶ 38 ("Nothing material changed between April 20, 2026 — when Respondents were ordered to release Petitioner and did so, subject only to standard ISAP-type

---

[1] Petitioner states that the arresting officers "did not find drugs on [him]," and that his "criminal defense counsel intends to challenge the underlying search – which occurred while Petitioner was asleep in his own vehicle, parked in the driveway of his residence, prompted only by a barking dog – as a violation of the Fourth Amendment." (FAP at 7-8, ¶ 29.)

conditions — and ***April 27, 2026***, when Respondents re-detained him.") (emphasis added).) After Respondents' answered the initial Petition and attached the above documents, Petitioner replied that these notices were issued "weeks after Petitioner's actual re-detention at a routine ICE check-in in ***mid-to-late May 2026***…." (Dkt. 11 at 2 (emphasis added).) The FAP continues to assert that Petitioner was detained by ICE "sometime in mid-to-late May 2026," after his "release[] from local custody on or about May 10, 2026" (FAP at 8, ¶¶ 30-31), and that the notice and interview did not occur until "weeks" later (id. at 8, ¶ 32). Respondents, on the other hand, continue to assert that the notice was served and interview conducted "upon [Petitioner's] detention." (Answer at 4.)

**E. Habeas Proceedings.**

**1. Dismissal of Initial Petition and Stay of Removal.**

On August 14, 2026, Petitioner filed the initial Petition. (Dkt. 1.) The eight claims raised in the Petition generally fell into three categories. First, the Petition argued that Petitioner's detention was unconstitutional because he is not a flight risk or danger to the community. (Pet. at 13, ¶ 56.) Second, the Petition argued that his detention was unconstitutional and/or illegal because ICE did not use proper procedures when they revoked his OSUP. (Pet. at 14-15, ¶¶ 60, 66.) Third, the Petition argued his removal was not reasonably foreseeable—rendering his detention illegal under 8 U.S.C. § 1231(a)(6) and Zadvydas v. Davis, 533 U.S. 678 (2001)—because he "holds a final CAT deferral order barring his removal to Venezuela," and Respondents had "identified no alternative country of removal, obtained no travel documents, and secured no third-country acceptance, nor sought any immigration court order lifting the CAT deferral." (Pet. at 19, ¶ 86.)

The Petition sought: (a) immediate release from custody under the terms of supervision to which Petitioner was previously subject; and (b) an injunction preventing Respondents from re-detaining Petitioner "absent a material change in circumstances and the notice, interview, and findings required by 8 C.F.R.

§§ 241.4(l) and 241.13(i)." (Pet. at 19-20.)

Respondents answered the Petition on August 24, 2026. (Dkt. 10.) Respondents argued that Petitioner's OSUP was properly revoked because "he was *immediately* issued a Notice of Revocation of Release upon his detention and provided with an informal interview" (id. at 3-4), and he could not "demonstrate that the ICE officer did not have authority to revoke his release" (id. at 7). The Answer did not directly respond to Petitioner's claims alleging that his removal was not reasonably foreseeable. However, it asserted, "Third-country removals are permissible and authorized by statute," and "Petitioner is being provided with due process required for the third country removal." (Id. at 2-3.)

After Petitioner replied (Dkt. 11), on September 1, 2026, Respondents filed a "notice of intended removal," stating that they planned to remove him to Mexico on or after September 5, 2026 (Dkt. 12). This was the first time that Respondents had identified a specific third country of removal for Petitioner. (See FAP at 17, ¶ 66.)

On September 2, 2026, the Court temporarily stayed removal until completion of these habeas proceedings; dismissed the Petition with leave to amend; and set an expedited briefing schedule for a First Amended Petition. (Dkt. 13.) The Court found, "Respondents' identification of a specific third country for removal is a change of fact that may materially affect the claims raised in the Petition. For example, Petitioner argued that his removal was not reasonably foreseeable because Respondents had not identified a specific third country for removal. It is unclear whether the identification of Mexico moots such a claim or whether he could still bring such a claim based on new allegations of fact." (Id. at 3.) The Court also found that it was "not clear whether Petitioner has been given an opportunity to seek CAT protections from Mexico on the same grounds that the IJ previously granted him protections from Venezuela (or any other grounds)." (Id.)

### 2. FAP and Claims Currently at Issue.

Petitioner filed the FAP on September 17, 2026. (Dkt. 15.) Petitioner states that he "has never resided in Mexico, is not a citizen or national of Mexico, and has no ties to Mexico," and that Venezuela was the only country specified in the IJ's 2023 removal order. (FAP at 9, ¶ 40.) "Consistent with DHS and ICE policy governing third country removals, … Respondents did not ask Petitioner whether he feared removal to Mexico, and did not afford him any opportunity, before issuing that notice, to raise a fear-based protection claim specific to Mexico." (FAP at 10, ¶ 41.) He alleges that he "intends to pursue a claim for protection from removal to Mexico under the CAT, on the same basis that the Immigration Court already found sufficient to grant him deferral of removal to Venezuela…." (FAP at 10, ¶ 43.) The FAP raises the following claims:

Ground 1: "Statutory Violation – 8 U.S.C. § 1231(a)(6) / Zadvydas v. Davis": Petitioner's removal is not reasonably foreseeable because: (a) "Respondents have not represented that any diplomatic assurances have been obtained or credited, that Mexico has agreed to accept Petitioner, or that any travel document has been obtained"; and (b) "Petitioner is entitled to raise a CAT-based fear claim as to Mexico before removal there may lawfully proceed — a process that, as set forth above, typically takes weeks to months, and often longer given the likelihood of further Immigration Court proceedings and potential appeal." (FAP at 16, ¶¶ 60-63.)

Ground 2: "Violation of the Fifth Amendment – Due Process (Removal to a Newly Designated Third Country Without Notice or Meaningful Opportunity to Raise a Fear-Based Claim)": Respondents scheduled Petitioner's removal to Mexico four days after notifying him of their intent to do so, without asking him "whether he feared removal to Mexico" or "afford[ing] him [a] meaningful opportunity to raise a fear-based claim specific to Mexico…." (FAP at 17, ¶ 66.) "Petitioner has a substantial, non-frivolous basis to fear removal to Mexico: the

same category of serious psychiatric illness and need for ongoing medication and treatment that the Immigration Court already found sufficient to warrant deferral of removal to Venezuela…." (FAP at 17, ¶ 67.)

Ground 3: "Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (B) — Failure to Follow Third-Country Removal Screening Procedures": "Under DHS's and ICE's own governing guidance for third-country removals, a noncitizen who states a fear of the designated country must be referred to USCIS for a reasonable fear screening before removal may proceed. Petitioner states that fear in this FAP and has not been afforded that referral." (FAP at 18, ¶¶ 69-71.) Petition cites a July 2025 memorandum issued by the Acting Director of ICE. (FAP at 18, n.2 (citing ICE Director Todd Lyons, "Third Country Removals Following the Supreme Court's Order in [DHS] v. D.V.D., No. 24A1153 (U.S. June 23, 2025)" memorandum, July 9, 2025, https://storage.courtlistener.com/recap/gov.uscourts.mad.282404/gov.uscourts.mad.282404.190.1.pdf).)

Ground 4: "Violation of the Fifth Amendment — Substantive Due Process (Revocation of Order of Supervision)": Petitioner's detention serves no proper purpose because it is based on an arrest and pending criminal charges, not a conviction. (FAP at 18-19, ¶¶ 72-75.)

Ground 5: "Violation of the Fifth Amendment — Procedural Due Process (Revocation of Order of Supervision)": Respondents revoked Petitioner's OSUP "without timely notice or a contemporaneous opportunity to respond." (FAP at 19-20, ¶¶ 76-81.)

Ground 6: "Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (B) — Contrary to Law and Constitutional Rights (Revocation)": Respondents did not follow their own regulations when they revoked Petitioner's OSUP. (FAP at 20, ¶¶ 82-84.)

Ground 7: "Violation of the Administrative Procedure Act, 5 U.S.C.

§ 706(2)(A) — Arbitrary and Capricious (Revocation)": Revoking Petitioner's OSUP was arbitrary and capricious because it was based solely on "an unadjudicated, contested arrest…." (FAP at 20-2, ¶¶ 85-87.)

Ground 8: "Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C) — In Excess of Statutory Authority (Revocation)": "8 U.S.C. § 1231(a)(6) authorizes continued detention only where a person is found dangerous, unlikely to comply with a removal order, or subject to specified statutory grounds, and even then only where removal remains reasonably foreseeable. Zadvydas, 533 U.S. at 699-700. Regulations purporting to authorize revocation on grounds other than those in § 1231(a)(6) and its implementing regulations are ultra vires." (FAP at 21, ¶¶ 88-89.)

Ground 9: "Ultra Vires Action (Revocation)": "There is no statute, constitutional provision, or other source of law that authorizes Respondents to detain Petitioner absent the findings and process required by 8 C.F.R. §§ 241.4(l) and 241.13(i), none of which Respondents timely made or provided." (FAP at 21, ¶¶ 90-91.)

Ground 10: "Violation of the Fourth Amendment (Revocation)": "Respondents … lacked probable cause, or any lawful basis, to re-detain Petitioner, and his re-detention violates the Fourth Amendment." (FAP at 22, ¶¶ 92-93.)

The Petition seeks the following relief: (1) Petitioner's immediate release from custody "on terms no more restrictive than those imposed on April 20, 2026"; (2) an injunction preventing Respondents from removing him to Mexico or any other third country "unless and until Petitioner has been afforded written notice, a meaningful opportunity to raise a fear-based claim, referral to USCIS for a reasonable fear screening, and completion of any resulting proceedings including Immigration Judge review"; and (3) an injunction preventing Respondents "from re-detaining Petitioner absent a material change in circumstances and the notice,

interview, and findings required by 8 C.F.R. §§ 241.4(l) and 241.13(i)." (FAP at 23.)

## III. DISCUSSION

### A. Petitioner is Not Entitled to Relief on Grounds 5 and 6, His Claims Alleging Respondents Failed to Give Him Notice and an Opportunity to Be Heard When They Revoked His OSUP.

#### 1. Parties' Arguments.

Petitioner argues, "[DHS] [r]egulations require notice and a prompt interview attending the revocation decision itself," and "Respondents' own exhibits establish that no such process preceded Petitioner's actual loss of liberty in mid-to-late May 2026," because "the Notice of Revocation and informal interview were not generated until June 1, 2026 – weeks later – and were predicated on a [criminal] charge that remains unadjudicated and contested." (FAP at 19, ¶ 79.) Petitioner argues that the lack of prompt notice and interview violated his due process rights (Ground 5); ICE regulations, thereby rendering it contrary to law and arbitrary and capricious under the APA (Ground 6).

Respondents argue, "Petitioner was issued a Notice of Revocation of Release upon his detention and provided with an informal interview." (Answer at 4.) They argue that this paperwork "notified [Petitioner] changed circumstances, including that he violated a condition of his release when he was" arrested by the Orange Police Department on May 3, 2026. (Id. at 4.) Alternatively, Respondents argue, "Whatever procedural deficiencies supposedly occurred, they do not warrant Petitioner's release and indeed could be cured by means well short of release." (Id. at 6.)

Petitioner replies that this paperwork was not served on him until weeks after he was detained "after his release from local custody on or about May 10, 2026…." (Reply at 3.) He argues, "The precise date [of Petitioner's detention] is known only to Respondents, who have not disclosed it." (Id. at 3, ¶ 2.)

**2. Analysis.**

The ICE paperwork Respondents have submitted suggests that Petitioner was arrested by ICE on June 1, 2026, the same day he was served with a notice of revocation and given an informal interview. This evidence shows that ICE complied with the applicable regulatory procedures for revoking Petitioner's OSUP. See generally 8 C.F.R. §§ 241.4(*l*)(1), 241.13(i)(3).

Petitioner has not submitted any competent evidence to the contrary. The Court disagrees that the date of Petitioner's ICE arrest is known only to Respondents. It should also be known to Petitioner himself. The record does not contain any sworn declaration from Petitioner about the facts of his ICE arrest, and neither the Petition nor FAP were signed under penalty of perjury. As discussed above, the allegations about the date of Petitioner's arrest have changed throughout this lawsuit. (Compare Pet. at 8-9, ¶¶ 35-38 (alleging Petitioner was arrested by ICE on April 27, 2026) with FAP at 8, ¶¶ 30-31 (alleging Petitioner was arrested "sometime in mid-to-late May 2026").)

Accordingly, Petitioner has not demonstrated that he is entitled to relief on Grounds 5 and 6.

**B. Petitioner is Entitled to Relief on Grounds 2 and 3, His Claims Challenging Respondents' Third Country Removal Process.**

**1. Legal Standard.**

When an IJ orders a noncitizen removed from the United States, the IJ must identify a removal country or alternative countries to which the noncitizen can be removed. 8 C.F.R. § 1240.12(d); see also Hadera v. Gonzales, 494 F.3d 1154, 1156 (9th Cir. 2007). "[T]he process for selecting the country to which [they] will be removed is prescribed by 8 U.S.C. § 1231(b)(2)." Jama v. ICE, 543 U.S. 335, 337 (2005). As the Supreme Court has summarized:

> The statute … provides four consecutive removal commands: (1) An alien shall be removed to the country of his choice (subparagraphs

> (A) to (C)), unless one of the conditions eliminating that command is satisfied; (2) otherwise he shall be removed to the country of which he is a citizen (subparagraph (D)), unless one of the conditions eliminating that command is satisfied; (3) otherwise he shall be removed to one of the countries with which he has a lesser connection (clauses (i) to (vi) of subparagraph (E)); or (4) if that is "impracticable, inadvisable, or impossible," he shall be removed to "another country whose government will accept the alien into that country" (clause (vii) of subparagraph (E)).

Jama, 543 U.S. at 341.

"Third-country removals represent the fourth command and involve deportation to countries that are not identified in a final removal order and to which the non-citizen has no connection." Pham v. Warden, 833 F. Supp. 3d 1092, 1114 (E.D. Cal. 2026) (citing § 1231(b)(2)(E)(vii)). "While DHS has the authority to remove a noncitizen to a country not identified in the final removal order, there is no statute or regulation providing a specific procedure to effectuate a third country removal." Id.

The INA states that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). In Andriasian v. Immigr. & Naturalization Serv., 180 F.3d 1033 (9th Cir. 1999), the Ninth Circuit held that, during removal proceedings, due process requires the government to notify noncitizens of the specific countries to which they might be removed, so that they have an opportunity to present evidence about possible threats to their life or freedom in those countries. Id. at 1041 (finding government "violated a basic tenet of constitutional due process" by failing to notify him of possible removal to Azerbaijan until after the close of

evidence). The Ninth Circuit reasoned:

> [I]ndividuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence. … Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both [DHS] regulations and the constitutional right to due process.

Id.

Applying Andriasian, numerous district courts in this circuit have held that "ICE's policy for third-country removals—which provides little to no notice of the country to which a noncitizen is to be removed and no meaningful opportunity to raise a fear-based claim—is incompatible with Ninth Circuit law and violates due process." Pham, 833 F. Supp. 3d at 1115-16 (collecting cases); Morales Sanchez v. Bondi, 811 F. Supp. 3d 1166, 1179 (C.D. Cal. 2025) (enjoining the government "from removing Petitioner to a third country without notice and an opportunity to be heard"); Karimaghaee v. Bowen, 832 F. Supp. 3d 1029, 1040 (C.D. Cal. 2026) (enjoining the government "from removing Petitioner to a third country without notifying Petitioner of the third country to which Respondents are seeking removal, without notifying him that he can raise fear-based claims, and without an opportunity to raise any fear-based claims as required under 8 U.S.C. § 1231(b)(3) and Ninth Circuit law"); Qu v. Mullin, No. 26-cv-1302-CAS-AGR, 2026 WL 836681, at *5, 2026 U.S. Dist. LEXIS 66360, at *14-15 (C.D. Cal. Mar. 26, 2026) ("The Court finds that Petitioner's potential removal 'to a third country[,] without meaningful notice and an opportunity to assert a fear-based claim,' would likely violate due process."); Rea-Hernandez v. Bondi, 824 F. Supp. 3d 1124, 1138 (W.D. Wash. 2026) (granting the petitioner's request to "[o]rder that Respondents may not remove or seek to remove Petitioner to a third country without notice and

meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings"); Pantoja v. Bondi, 818 F. Supp. 3d 1227, 1235 (W.D. Wash. 2026) ("Respondents are ENJOINED from removing Mr. Pantoja to a country other than Cuba without notice and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge"); see also Liu v. Noem, No. 26-cv-891-MRA-PD, 2026 WL 712952, at *4, 2026 U.S. Dist. LEXIS 53743, at *11-12 (C.D. Cal. Mar. 10, 2026) ("While there is no present indication that the government will seek to remove Petitioner to a third country, any efforts to do so must comport with the applicable statutes and regulations as well as Petitioner's due process rights."); see also D.V.D. v. DHS, 821 F. Supp. 3d 102 (D. Mass. 2026), affirmed in relevant part, D.V.D. v. DHS, -- F.4th ---, No. 26-1212, 2026 WL 2797801, 2026 U.S. App. LEXIS 28742 (1st Cir. Sept. 18, 2026) ("[A]n individual's right to contest removal to a country based on a fear of persecution in that country means little if one does not receive prior notice of the intended removal destination and a meaningful opportunity to contest that destination.").

**2. Parties' Arguments.**

In Ground 2, Petitioner argues that Respondents violated his procedural due process rights by scheduling his removal to Mexico four days after notifying him of their intent to do so, without asking him "whether he feared removal to Mexico" or "afford[ing] him [a] meaningful opportunity to raise a fear-based claim specific to Mexico…." (FAP at 17, ¶ 66.) He asserts that he "has a substantial, non-frivolous basis to fear removal to Mexico: the same category of serious psychiatric illness and need for ongoing medication and treatment that the Immigration Court already found sufficient to warrant deferral of removal to Venezuela…." (FAP at 17, ¶ 67.) In Ground 3, he argues that this also violates "DHS's and ICE's own governing guidance for third-country removals…." (Id. at 18, ¶¶ 69-71.)

Respondents argue, "All that the Petitioner is requesting here is that the government follow the law when it comes to third-country removals. It is improper

to prospectively enjoin the government to follow the law. … Petitioner is being provided with due process required for the third country removal." (Answer at 3.) They argue Petitioner has been on notice of DHS's intent to remove him to Mexico since August 31, 2026, and that he "provides no evidence that his purported fear of Mexico has been raised in the proper venues, or to the proper parties." (Id. at 3-4.)

Petitioner replies that he is seeking more than an "obey the law" injunction, and that this Court's order preventing his removal does not mean that DHS has given him appropriate process. (Reply at 13-14.)

**3. Analysis.**

Respondents do not appear to dispute that, but for this Court's order enjoining Petitioner's removal to Mexico, he would have been removed there without an opportunity to raise any fear-based claims regarding that country. They do not explain what process is available to Petitioner.

The July 2025 ICE policy Petitioner cites has the same defects that other courts have found rendered earlier policies unconstitutional. It states that ICE officers "will not affirmative ask whether the [noncitizen] is afraid of being removed to the country of removal" and may effectuate removal within six hours of serving the notice of removal. See ICE Director Todd Lyons, "Third Country Removals Following the Supreme Court's Order in [DHS] v. D.V.D., No. 24A1153 (U.S. June 23, 2025)" memorandum, July 9, 2025, https://storage.courtlistener.com/recap/gov.uscourts.mad.282404/gov.uscourts.mad.282404.190.1.pdf).) Respondents' briefing does not dispute that this is ICE's current policy.

Accordingly, Petitioner is entitled to relief on Grounds 2 and 3.

**C. Petitioner is Entitled to Relief on Ground 1, His Claim That His Removal is Not Reasonably Foreseeable Under *Zadvydas*.**

**1. Legal Standard.**

"When a final order of removal has been entered against an alien, the

Government must facilitate that alien's removal within a 90-day 'removal period.'" Thai v. Ashcroft, 366 F.3d 790, 793 (9th Cir. 2004) (citation omitted); 8 U.S.C. § 1231(a)(1)(A). During the removal period, detention is mandatory. 8 U.S.C. § 1231(a)(2); see also Khotesouvan v. Morones, 386 F.3d 1298, 1301 (9th Cir. 2004) (upholding constitutionality of mandatory detention during the removal period, distinguishing Zadvydas).

Where removal cannot be accomplished within the 90-day removal period, continued detention is authorized by 8 U.S.C. § 1231(a)(6) but is not mandatory. Johnson v. Arteaga-Martinez, 596 U.S. 573, 578 (2022). "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Id. at 578-79 (quoting 8 U.S.C. § 1231(a)(6)); see also 8 CFR § 241.4 (setting out procedures DHS must follow to impose continued detention). "Continued detention under this provision creates the 'post-removal period.'" Johnson v. Guzman Chavez, 594 U.S. 523, 528-29 (2021).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court held that § 1231(a)(6) does not authorize the government to detain a noncitizen awaiting removal "indefinitely" beyond the statutory 90-day removal period. 533 U.S. at 689. Rather, the Supreme Court construed the statute to contain an implicit "reasonable time" limitation. Id. at 682. The Court held that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Id. at 682, 689. The Court determined that six months was a presumptively reasonable period of detention. Id. at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must

respond with evidence sufficient to rebut that showing." Id. "For detention to remain reasonable, as the period or prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

**2. Parties' Arguments.**

Petitioner argues that his removal is not reasonably foreseeable because: (a) "Respondents have not represented that any diplomatic assurances have been obtained or credited, that Mexico has agreed to accept Petitioner, or that any travel document has been obtained"; and (b) "Petitioner is entitled to raise a CAT-based fear claim as to Mexico before removal there may lawfully proceed — a process that, as set forth above, typically takes weeks to months, and often longer given the likelihood of further Immigration Court proceedings and potential appeal." (FAP at 16, ¶¶ 60-63.)

Respondents' Answer fails to respond to this claim.

**3. Analysis.**

On August 18, 2026, this Court issued its Standing Order for § 2241 Immigration Petitions, which stated, "Failing to file an answer by the due date−or filing an answer that fails to substantively respond to any claim in the petition−may result in the Court granting the petition or claim as unopposed." (Dkt. 7 at 1-2.) Petitioner is therefore entitled to relief on Ground 1 based on Respondents' failure to address this claim.

The record also supports granting relief on this claim. Pursuant to the relief ordered by this Court on Grounds 2 and 3, Petitioner must be given an opportunity to raise a fear-based claim against removal to Mexico. It is unclear how long it will take to properly raise and adjudicate such a claim. The Court therefore cannot say that Petitioner's removal to Mexico, or any other third country, is reasonable foreseeable.

**D. <u>Grounds 4, 7-10: Claims Alleging There is No Proper Purpose for Petitioner's Detention.</u>**

The only relief sought in connection with these claims is Petitioner's release from custody. Because the Court is granting this relief on Ground 1, his <u>Zadvydas</u> claim, it is unnecessary for the Court to reach these claims. They will therefore be dismissed as moot.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that:

1. Grounds 1, 2, and 3 of the First Amended Petition are granted; Grounds 5 and 6 are denied; and Grounds 4, 7, 8, 9, and 10 are dismissed as moot.

2. Respondents shall **immediately release** Cristobal Francisco Arreaza Sanchez, a.k.a. Cristobal Francisco Arreaza, a.k.a. Cristobal Arreaza (A# 029-541-707) from custody.

3. If Respondents have not released Petitioner **within three (3) days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.

4. Respondents shall not remove Petitioner to Mexico, or any other country not specified in Petitioner's removal order, unless they adhere to the following procedures:

    a. Provide Petitioner a meaningful opportunity and a minimum of 10 days to raise a fear-based claim for protection prior to removal;

    b. If Petitioner demonstrates a reasonable fear of removal to the third country, Respondents must move to reopen Petitioner's removal proceedings; and

    c. If Petitioner is not found to have demonstrated a reasonable fear of removal to the third country, Respondents must provide a

meaningful opportunity and a minimum of 15 days for Petitioner to seek reopening of Petitioner's immigration proceedings.

5. Respondents shall not re-detain Petitioner unless the proceedings in paragraph 4 have been completed and there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.[2]

DATED: October 19, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

[2] To the extent the Petition seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).